UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
GEORGE REILLY and VITO GIACHETTI,
*as Co-Chairmen of the Boards of Trustees of
the* PLUMBERS LOCAL NO. 1 WELFARE
FUND, et al.,                                    **REPORT AND**
                                                 **RECOMMENDATION**
                    Plaintiffs,
                                                 03 CV 3405 (NGG)
        - against -

GAGE PLUMBING II CORP., et al.,

                    Defendants.
----------------------------------------------------------X

      Plaintiffs George Reilly and Vito Giachetti, as Co-Chairmen of the Board of Trustees of

the Plumbers Local No. 1 Plumbing Industry Board Welfare Fund, Additional Security Benefit

Fund, Vacation and Holiday Fund, Trade Education Fund and 401(k) Savings Plan (collectively,

the "Local Funds"), Martin Maddaloni and Charles Carlson, as Co-Chairmen of the Board of

Trustees of the Plumbers and Pipefitters National Pension Fund (the "National Pension Fund"),

Lawrence Mazzola and Smitty Belcher, as Co-Chairmen of the Board of Trustees of the

International Training Fund (the "International Training Fund"), and Mr. Reilly, as Business

Manager of Local Union No. 1 of the United Association of Journeymen and Apprentices of the

Plumbing and Pipefitting Industry of the United States and Canada (the "Union") (collectively,

the "Funds"), filed this action against defendants Gage Plumbing II Corporation ("Gage

Plumbing II"), Frank Sorichetti, Edward Fitzpatrick and John Hubner,[1] pursuant to Sections

---

      [1] Originally, the Trustees of the Plumbers Local No. 1 Plumbing Industry Board National
Pension Fund, Welfare Fund, Vacation and Holiday Fund, Trade Education Fund, Additional
Security Benefit Fund and Promotional Fund and Mr. Reilly, in his capacity as Business Manager
of the Union, filed this action on July 9, 2003, naming only Gage Plumbing Corporation ("Gage

502(a)(3) and 515 of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1132(a)(3), 1145 ("ERISA"), and Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"). Plaintiffs seek to recover (1) delinquent contributions owed to the Funds, (2) interest, (3) liquidated damages, (4) attorneys' fees and (5) costs.

Following service of the Amended Summons and Second Amended Complaint on Gage Plumbing II and Mr. Fitzpatrick[2] (Oh Aff. ¶ 8), defendants failed to file an answer or otherwise move with respect to the Complaint. On January 21, 2005, plaintiffs filed a motion for default judgment as to Gage Plumbing II and Mr. Fitzpatrick, and on March 15, 2005, the Clerk of the Court entered a default as to these defendants. On April 28, 2005, the district court entered a default judgment against Gage Plumbing II and Mr. Fitzpatrick[3] and referred the matter to the undersigned to conduct an inquest on damages.

On May 5, 2005, this Court issued an Order directing the parties to submit papers calculating damages by June 6, 2005. Although the Court has received plaintiffs' papers, the

---

Plumbing") and Mr. Sorichetti as defendants. Plaintiffs filed an Amended Complaint ("Am. Compl.") on September 10, 2003 and filed a Second Amended Complaint ("Second Am. Compl.") on July 21, 2004. In the Second Amended Complaint, plaintiffs substituted Gage Plumbing II in place of Gage Plumbing and added Mr. Fitzpatrick and Mr. Hubner as defendants. Plaintiffs named Mr. Reilly and Mr. Giachetti, as co-chairmen of the Board of the Local Funds, Mr. Maddaloni and Mr. Carlson, as co-chairmen of the Board of the National Pension Fund, and Mr. Mazzola and Mr. Belcher, as co-chairmen of the Board of the International Training Fund, as plaintiffs and substituted the 401(k) Savings Plan in place of the Promotional Fund.

[2] Gage Plumbing II was served on August 16, 2004, and Mr. Fitzpatrick was served on December 31, 2004. (See Affidavit of Yongmin Oh, Esq., counsel for plaintiffs, dated June 8, 2005, submitted in further support of plaintiffs' motion for default judgment ("Oh Aff.") ¶ 8).

[3] Although plaintiffs filed a motion for a default judgment as to Mr. Hubner on March 11, 2005, the Clerk of the Court has not yet entered a default as to Mr. Hubner, and the district court has not yet entered a default judgment as to Mr. Hubner nor referred the matter to the undersigned.

2

Court has not received any submissions from defendants.

## FACTUAL BACKGROUND

The Local Funds, the National Pension Fund and the International Training Fund are jointly-administered, multi-employer, employee benefit plans which provide fringe benefits to employees performing services within the jurisdiction of the Union. (Second Am. Compl. ¶¶ 3-6). Defendant Gage Plumbing II is a for-profit corporation involved in the plumbing and pipefitting industry, located at 1588B White Plains Road, Bronx, New York. (Id. ¶ 7). The remaining defendants are officers of Gage Plumbing II - - Mr. Sorichetti is the president, Mr. Fitzpatrick is the vice president, and Mr. Hubner is the secretary. (Id. ¶¶ 8-10; Oh Decl., Ex. B).

In 2000, the Union entered into a Collective Bargaining Agreement (the "CBA"), which covered the period of July 1, 2000 through June 30, 2004, with various employers in the plumbing industry. (Second Am. Compl. ¶ 11). Under the CBA, the employers were obligated to pay benefit contributions to the Funds for all work performed within the Union's jurisdiction and to remit dues checkoffs and other contributions for all employees who authorized such wage deductions. (Id.; Oh Decl. ¶ 3, Ex. A).

In September 2001, defendant Gage Plumbing II entered into a one-page agreement with the Union in which it agreed to be bound by the CBA (the "Agreement").[4] (Second Am. Compl. ¶ 12; Oh Decl. ¶ 4, Ex. B). The Agreement was signed by Mr. Sorichetti, Mr. Fitzpatrick and

---

[4]Although Ms. Oh's Declaration states that this Agreement was signed in March 2001 (see Oh Decl. ¶ 4), the Second Amended Complaint states that the Agreement was signed in September 2001 (see Second Am. Compl. ¶ 12), and the Agreement is dated September 18, 2001. (See Oh Decl., Ex. B).

3

Mr. Hubner on behalf of Gage Plumbing II. (Compl. ¶ 13; Oh Decl. ¶ 4, Ex. B). Together, the CBA and the Agreement required defendants to make employee contributions to the Funds for plumbing work performed by its employees in accordance with the rate schedules set forth in the CBA. (Oh Decl. ¶ 5, Exs. A-B).

According to plaintiffs, defendants failed to remit contributions to the Local Funds for work performed during the period of September 2002 through December 2002 and to the National Pension Fund for work performed during the period of October 2002 through December 2002. (Id. ¶ 7; Second Am. Compl. ¶¶ 18-19). Plaintiffs allege that the delinquent contributions total $50,219.46 owed to the Local Funds and $652.40 owed to the National Pension Fund. (Id.)

In addition, plaintiffs claim that defendants failed to remit contributions to the Local Funds within the specified time limit[5] on "numerous occasions" between October 2001 and September 2002. (Compl. ¶ 77). Based upon these late payments, plaintiffs calculate that defendants owe $12,971.07 in late charges, including $600.00 in interest, $6,246.03 in liquidated damages and $6,125.04 in attorneys' fees. (Id.; Oh. Aff. ¶ 7).

## DISCUSSION

A. Basis for Default Judgment Damages

Once a default judgment is entered, the defendant is deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability. See Greyhound Exhibit Group, Inc. v.

---

[5] According to Article 2 of the CBA, the employer is obligated to pay contributions to the Funds no later than the twentieth day of the month following the month in which the fringe benefits were incurred (Oh Decl., Ex. A ¶ 19); and pursuant to Article 3, the employer is required to furnish a surety bond to guarantee payment of the benefits owed to the Funds. (Id., Ex. A ¶ 25).

4

E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993); Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (citing United States v. Di Mucci, 879 F.2d 1488, 1497 (7th Cir. 1989)); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65; Deshmukh v. Cook, 630 F. Supp. 956, 959 (S.D.N.Y. 1986); 10 James Wm. Moore et al., Moore's Federal Practice ¶ 55.12[1] (3d ed. 2004). The plaintiff must, however, still prove damages in an evidentiary proceeding at which the defendant has the opportunity to contest the claimed damages. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158. "'While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.'" Levesque v. Kelly Communications, Inc., No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993) (quoting Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)). The burden is on the plaintiff to establish its entitlement to recovery. See Clague v. Bednarski, 105 F.R.D. 552 (E.D.N.Y. 1985).

When a court enters a default judgment and the amount of damages sought does not consist of a sum certain, Rule 55(b) of the Federal Rules of Civil Procedure provides that:

> [i]f, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper.

Fed. R. Civ. P. 55(b)(2). While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." Fustok v. Conticommodity Services, Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (citing

Transportes Aereos De Angola v. Jet Traders Inv. Corp., 624 F. Supp. 264, 266 (D. Del. 1985)), aff'd, 873 F.2d 38 (2d Cir. 1989). Here, where plaintiffs filed a reasonably detailed affidavit and accompanying exhibits pertaining to the damages incurred and where defendants failed to appear before this Court, the Court can make an informed recommendation regarding damages without an evidentiary hearing.

B. Damages Available Under ERISA

In an ERISA action brought by a fiduciary for or on behalf of a plan to enforce rights under Section 1145, the statute specifies the damages to be awarded when judgment is entered in favor of the plan. See 29 U.S.C. § 1132(g)(2). These include:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of –
>      (i) interest on the unpaid contributions, or
>      (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

Id.; see, e.g., Iron Workers Dist. Council of Western New York and Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc., 68 F.3d 1502, 1505-07 (2d Cir. 1995). Thus, not only are plaintiffs who establish a violation of ERISA entitled to an award in the amount of delinquent contributions owed, 29 U.S.C. § 1132(g)(2)(A), but, in addition, plaintiffs are entitled an award of (1) interest accrued, 29 U.S.C. § 1132(g)(2)(B); (2) liquidated damages, 29 U.S.C. §

1132(g)(2)(C)(i)-(ii); and (3) reasonable attorney's fees and costs. 29 U.S.C. § 1132(g)(2)(D).

C. Application

1. Delinquent Contributions

Plaintiffs are seeking $50,219.46 in delinquent contributions owed to the Local Funds for work performed during the period of September 2002 through December 2002, and $652.40 in delinquent contributions owed to the National Pension Fund for work performed during the period of October 2002 through December 2002. (Oh Decl. ¶ 7; Second Am. Compl. ¶¶ 18-19). In support of their calculations, plaintiffs rely on copies of remittance reports submitted by Gage Plumbing II demonstrating the work performed and the amounts owed. (Oh Decl. ¶ 10, Ex. C).

Based upon Ms. Oh's Declaration and the supporting remittance reports, and given defendants' failure to object or to provide any contrary documentation, this Court respectfully recommends that the Local Funds be awarded $50,219.46 in delinquent contributions and that the National Pension Fund be awarded $652.40 in delinquent contributions.

2. Interest

Plaintiffs are also entitled to an award of (1) interest accrued during the period of the delinquency; (2) interest accrued from the commencement of the action through the date of judgment; and (3) interest from the date of judgment until the entire amount is paid. 29 U.S.C. § 1132(g)(2)(B). Here, based upon a rate of 10% per annum,[6] plaintiffs are seeking $13,039.84 in

---

[6] Under the CBA, the employer owes interest at a rate of 10% of delinquent contributions owed. (Oh Decl., Ex. A ¶ 23).

interest accrued on the $50,219.46 in delinquent contribution owed to the Local Funds.[7] (Oh Decl. ¶ 11, Ex. A ¶ 23). Based upon a rate of 12% per annum,[8] plaintiffs are also seeking $203.29 in interest accrued on the $652.40 in delinquent contributions owed to the National Pension Fund.[9] (Id. ¶ 12).

Having examined plaintiffs' calculations, the Court respectfully recommends that plaintiffs be awarded $13,039.84 in interest owed to the Local Funds and $203.29 in interest owed to the National Pension Fund.

3. <u>Liquidated Damages</u>

Where contributions remain unpaid at the time of commencement of a suit, plaintiffs are entitled to liquidated damages equal to the greater of (1) the interest on the unpaid contributions or (2) an amount, as provided for under the plan, not to exceed 20% of the delinquent contributions. 29 U.S.C. § 1132(g)(2)(C)(i)-(ii). Plaintiffs are seeking $10,043.89 in liquidated damages owed to the Local Funds, which represents 20% of the $50,219.46 of delinquent

---

[7] The interest calculation includes the period from November 1, 2002 to June 6, 2005. (Oh Decl. ¶ 11).

[8] It is unclear whether the plaintiffs are relying on a provision in the CBA or in some other document in seeking interest at a rate of 12% for the delinquent contributions owed to the Pension Fund. (See Oh Decl., Ex. A). However, since defendants have not objected to the interest calculation and the difference between 10% and 12% in interest accrued on $652.40 is minimal, the Court has approved the requested interest of $203.29.

[9] The interest calculation includes the period from November 15, 2002 to January 20, 2005. (Oh Decl. ¶ 12).

contributions owed[10] (Oh Decl. ¶ 11, Ex. A ¶ 23), and $65.24 in liquidated damages owed to the National Pension Fund, which represents 10% of the $652.40 of delinquent contributions owed.[11] (Id. ¶ 12).

Based upon plaintiffs' calculations, the Court respectfully recommends that plaintiffs be awarded $10,043.89 in liquidated damages owed to the Local Funds and $65.24 in liquidated damages owed to the National Pension Fund.

4. Late Charge

Plaintiffs also seek a late fee of $12,971.07 for defendants' failure to remit contributions to the Local Funds within the specified time limit on "numerous occasions" between October 2001 and September 2002. (Second Am. Compl. ¶ 77). This late charge includes $600.00 in interest, $6,246.03 in liquidated damages and $6,125.04 in attorneys' fees. (Id.; Oh. Aff. ¶ 7).

Plaintiffs have failed to document and substantiate their entitlement to this late fee. Accordingly, the Court respectfully recommends that plaintiffs' request for these late charges of $12,971.07 be denied at this time in the absence of further supporting documentation. However, on or before September 26, 2005, plaintiffs may submit a supplemental affidavit which clarifies plaintiffs' entitlement to this late charge.

---

[10] Under the CBA, the employer owes liquidated damages to the Local Funds in the amount of 20% of delinquent contributions owed. (Oh Decl., Ex. A ¶ 23).

[11] Although the employer owes liquidated damages to the Local Funds in the amount of 20% of delinquent contributions owed under the CBA (Oh Decl., Ex. A ¶ 23), plaintiffs appear to be seeking only 10% of the delinquent contributions owed to the National Pension Fund. (Id. ¶ 12).

5. Attorneys' Fees

Under ERISA, the Funds are also entitled to an award of reasonable attorneys' fees incurred in connection with this action. 29 U.S.C. § 1132(g)(2)(D). Accordingly, plaintiffs are seeking attorneys' fees in the amount of $10,626.17, which represents services performed by counsel in connection with plaintiffs' efforts to obtain this judgment. (Oh Decl. ¶¶ 13-15, Exs. D-E). In accordance with N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983), plaintiffs' counsel has submitted the declaration of Ms. Oh, including contemporaneous billing records which set forth a description of the legal services performed, the amount of time spent performing each of the services, the date on which the services were performed and the name of the attorney who performed the services. (Oh Decl., Ex. D).

Specifically, Ms. Oh's firm, Barnes, Iaccarino, Virginia, Ambinder & Shepherd, PLLC (the "Barnes firm"), is seeking $5,579.92 in fees. (Id. ¶ 13). The Barnes firm, who began representing plaintiffs in June 2004, filed the Second Amended Complaint, prepared the motion for default judgment, prepared papers in support of plaintiffs' damages calculations and engaged in telephone calls and correspondence with the clients. (Id.) In total, the Barnes firm expended 39.49 hours on the case and charged $200.00 per hour for partners, $150.00 per hour for associates and $50.00 per hour for paralegals. (Id.) In March 2005, the partners' billing rate increased to $210.00 per hour; the associates' billing rate increased to $160.00 per hour; and the paralegal's billing rate increased to $75.00 per hour. (Id.)

Plaintiffs are also seeking attorneys' fees in the amount of $5,046.25 for work performed by plaintiffs' previous counsel, Ralph P. Casella, P.C. & Associates (the "Casella firm"). (Id. ¶ 14). The Casella firm expended 19.79 hours and charged $300.00 per hour for partners and

10

$275.00 per hour for associates and paralegals. (Id.)

In determining a reasonable rate in an employment discrimination suit brought in this Court, the Second Circuit has held that the prevailing market rate should be that of attorneys practicing in the Eastern District of New York. See Luciano v. Olsten Corp., 109 F.3d 111, 115 (2d Cir. 1997). In this case, the rates requested by counsel appear to be slightly higher than billing rates approved in the Eastern District of New York. See, e.g., King v. JCS Enters., 325 F. Supp. 2d 162, 169-70 (E.D.N.Y. 2004) (holding that reasonable hourly rates for an ERISA case in the Eastern District range from $140.00 for first-year associates to $295.00 for experienced senior partners and $70.00 to 85.00 for law clerks); Rotella v. Bd. of Educ. of the City of New York, No. 01 CV 0434, 2002 WL 59106, at *2 (E.D.N.Y. Jan. 17, 2002) (holding that the prevalent rate in the Eastern District was between $200.00 and $250.00 per hour for partners and $100.00 to $200.00 per hour for junior and senior associates); Fink v. City of New York, 154 F. Supp. 2d 403, 407 (E.D.N.Y. 2001) (finding reasonable rates ranging from $200.00 to $250.00 per hour for partners, $100.00 per hour for junior associates and $200.00 per hour for senior associates);[12] New Leadership Comm. v. Davidson, 23 F. Supp. 2d 301, 303-04 (E.D.N.Y. 1998) (supplementing the Report and Recommendation of the magistrate judge in a labor action and approving rates of $275.00 per hour for the partner, $200.00 for an experienced associate, $150.00 for a less experienced associate and $65.00 for law students). The rates requested here also appear to be slightly higher than the billing rates utilized for fee awards in labor cases in the

---

[12] In Fink, however, the Court held that, due to the complexity of the issues in that particular employment discrimination litigation, fees of $275.00 per hour for partners, $225.00 per hour for senior associates and $150.00 per hour for junior associates were acceptable. Fink v. City of New York, 154 F. Supp. 2d at 409.

11

Southern District of New York. See, e.g., Farkas v. Soft Drink & Brewery Workers Local 812, No. 91 CV 7636, 1996 WL 578100, at *5 (S.D.N.Y. Oct. 7, 1996) (finding reasonable hourly rates ranging from $135.00 to $275.00); Schermerhorn v. Transp. Workers Union of Am. Local 100, No. 93 CV 6686, 1996 WL 79334, at *4 (S.D.N.Y. Feb. 23, 1996) (finding $300.00 per hour reasonable for a partner).

Based on a review of the description of the services rendered by the Barnes firm (see Oh Decl., Ex. D), this Court finds plaintiffs' request for attorneys' fees to be reasonable and appropriate under the circumstances and determines that the rates charged by the Barnes firm are within or lower than the prevailing rates awarded to attorneys engaged in this type of practice in the Eastern District of New York. Accordingly, the Court respectfully recommends that plaintiffs be awarded $5,579.92 in attorneys' fees incurred by the Barnes firm.

However, the Court finds that the rates charged by the Casella firm are not within the range of prevailing rates awarded to attorneys engaged in this type of practice in the Eastern District of New York. The associates' rate of $275.00 per hour appears high, and there is no justification for billing paralegals at $275.00 per hour. More importantly, the records submitted in support of the Casella firm's fees fail to specify what work was done by whom and therefore, it is impossible for the Court to simply reduce the amounts charged for the associates' and paralegals' time. (See id., Ex. E). Therefore, on or before September 26, 2005, plaintiffs may submit a supplemental affidavit which clarifies which individuals at the Casella firm performed which tasks.

6. <u>Costs</u>

Under ERISA, the Funds are also entitled to an award of reasonable costs incurred in connection with this action. 29 U.S.C. § 1132(g)(2)(D). Here, plaintiffs seek reimbursement for a filing fee of $150.00. (<u>Id.</u> ¶ 15). This request is reasonable, and the Court respectfully recommends that plaintiffs be awarded $150.00 in costs.

## CONCLUSION

Accordingly, this Court respectfully recommends that plaintiffs be awarded (1) $50,871.86 in delinquent contributions; (2) $13,243.13 in interest; (3) $10,109.13 in liquidated damages; (4) $5,579.92 in attorneys' fees incurred by the Barnes firm; and (5) $150.00 in costs.

However, absent further supporting documentation, this Court cannot recommend the requested award of $12,971.07 for late contributions. Accordingly, it is respectfully recommended that plaintiffs be permitted to submit a supplemental affidavit and any supporting documentation justifying this award of late fees on or before September 26, 2005.

It is further recommended that on or before September 26, 2005, plaintiffs be allowed to submit a supplemental affidavit clarifying which individual at the Casella firm performed which legal task.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; <u>Small v. Secretary of Health and Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989).

13

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
September 9, 2005

/s/ Cheryl Pollak
Cheryl L. Pollak
United States Magistrate Judge